UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case No. 6:09-bk-03965-ABB

Chapter 7

IN RE:                                        :
                                              :
David Foster                                  :
                                              :
                 Debtor.                      :
_____              :

---

### NOTICE OF OPPORTUNITY
### TO OBJECT AND FOR HEARING

**PURSUANT TO LOCAL RULE 2002-4, THE COURT WILL CONSIDER THIS MOTION WITHOUT FURTHER NOTICE OR HEARING UNLESS A PARTY IN INTEREST FILES AN OBJECTION WITHIN 21 DAYS FROM THE DATE OF SERVICE OF THIS PAPER. IF YOU OBJECT TO THE RELIEF REQUESTED IN THIS PAPER, YOU MUST FILE YOUR OBJECTION WITH THE CLERK OF THE COURT AT 135 W. CENTRAL BOULEVARD, SUITE 950, ORLANDO, FL 32801, AND SERVE A COPY ON THE MOVANT'S ATTORNEY, LAWRENCE M. WEISBERG, ESQUIRE OF THE LAW OFFICES OF GREENFIELD & COOMBER, P.A., 7000 W. PALMETTO BANK ROAD, #402, BOCA RATON, FLORIDA 33433. IF YOU FILE AND SERVE AN OBJECTION WITHIN THE TIME PERMITTED, THE COURT WILL SCHEDULE A HEARING AND YOU WILL BE NOTIFIED. IF YOU DO NOT FILE AN OBJECTION WITHIN THE TIME PERMITTED, THE COURT WILL CONSIDER THAT YOU DO NOT OPPOSE THE GRANTING OF THE RELIEF REQUESTED IN THE PAPER WILL PROCEED TO CONSIDER THE PAPER WITHOUT FURTHER NOTICE OR HEARING, AND MAY GRANT THE RELIEF REQUESTED.**

---

### AMENDED MOTION BY FLAGSTAR BANK, FSB FOR RELIEF
### FROM STAY AND ABANDONMENT AND NOTICE OF
### OPPORTUNITY TO OBJECT AND FOR HEARING
### RE: 2875 Stags Leap Drive, Orange City, Florida 32763
### (As to Clerk of Court Address Within Negative Notice Only)

Comes Now, FLAGSTAR BANK, FSB, by and through its undersigned

attorneys, moves the Court for an Order Granting Relief of Automatic Stay and in

support thereof would show:

1.    That Debtor(s) filed a Chapter 7 petition in bankruptcy in the United States Bankruptcy Court for the Middle District of Florida on March 29, 2009.

2.    This is a motion pursuant to Bankruptcy Rule 4001(a) for a modification of the automatic stay provisions of Section 362(d)(1) of the Bankruptcy Code.

3.    That FLAGSTAR BANK, FSB, is a secured creditor by virtue of a promissory note and mortgage on real property.  Said real property has the following legal description: Lot 27, Block A, FAWN RIDGE – PHASE II – A REPLAT, according to the map or plat thereof, as recorded in Plat Book 50, Pages 52 through 54, inclusive, of the Public Records of Volusia County, Florida a/k/a 2875 Stags Leap Drive, Orange City, Florida  32763.  The note and mortgage are attached hereto as Exhibit "A".

4.    That payments due pursuant to the aforementioned note and mortgage have been in default, and remain in default since October 1, 2008.

5.    That the aforementioned documents give the secured creditor, FLAGSTAR BANK, FSB, a first mortgage position on the property known as: 2875 Stags Leap Drive, Orange City, Florida  32763.

6.    That Debtors are indebted to the secured creditor in the amount of $248,386.99 as set forth in FLAGSTAR BANK, FSB's Affidavit of Indebtedness which is attached to this motion as Exhibit "B".

7.    The Volusia County Property Appraiser shows a just market value of the property at $127,430.00.  A copy of the appraisal is attached hereto and made a part hereof as Exhibit "C".

8.    That the Debtors failed to adequately protect the interest of the secured creditor.

9.      That there is no equity in the property.

10.      Movant has incurred attorney's fees in the amount of $550.00 as a result of the necessity of filing this Motion.  Said attorney's fees and costs may be recoverable pursuant to state law and the mortgage documents.

11.      That FLAGSTAR BANK, FSB, is prohibited from instituting and/or completing a foreclosure action in the State Court because of the pendency of this Bankruptcy motion, and that in the absence of the court's Order allowing the secured creditor, FLAGSTAR BANK, FSB, to proceed with the Foreclosure action, the secured creditor's security will be significantly jeopardized.

12.      Pursuant to M.D. Fla. L.B.R. 9004-2(1) the estimated time required for hearing is five (5) minutes, if required.

WHEREFORE, FLAGSTAR BANK, FSB, moves this Honorable Court for an Order Granting Relief from the Automatic Stay.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Amended Motion By Flagstar Bank For Relief From Stay And Abandonment and Notice Of Opportunity To Object and For Hearing Re: 2875 Stags Leap Drive, Orange City, Florida 32763 (As to Clerk of Court Address Within Negative Notice Only), copy of the Affidavit of Indebtedness, copy of the Appraisal, and copies of the Note and Mortgage have been served by either CM/ECF transmission or standard first class U.S. Mail on this 9th day of December, 2009 to the following:

David Foster, 2875 Stags Leap Drive, Orange City, FL   32763

L. Todd Budgen, Esquire, P. O. Box 3229, Orlando, FL   32802-3229

George E. Mills, Jr., P. O. Box 995, Gotha, FL  34734-0995

PRA Receivables Management, LLC, P. O. Box 41067, Norfolk, VA   23541

Dated: December 9, 2009                        Respectfully submitted,


                                         By: /s/  Lawrence M. Weisberg
                                         Lawrence M. Weisberg, Esquire
                                         Florida Bar No. 962198
                                         Counsel for Flagstar Bank, FSB
                                         Greenfield & Coomber, P.A.
                                       7000 W. Palmetto Park Road, Suite 402
                                         Boca Raton, Florida   33433
                                         Telephone: (561) 362-7355
                                         Facsimile: (561) 828-5858
                                         E-mail: bankruptcy@lmwlegal.com

02/29/2008 03:30 PM
Doc stamps 817.55
Intangible Tax 467.26
Instrument# 2008-042020 # 1
Book: 6199
Page: 2922

This Instrument Prepared By:
RESIDENTIAL FINANCE CORPORATION

Joseph Smith

(And Recording Return To:)
RESIDENTIAL FINANCE CORP
401 N. FRONT STREET, SUITE 300
COLUMBUS, OHIO 43215
Loan Number: 501880272

RETURN TO
Maymax Title Agency of Ohio, LLC
32 W. Hoster St Ste 220
Columbus, OH 43215
Tel. 614.221.8182

[Space Above This Line For Recording Data]

## MORTGAGE

FHA CASE NO.
0-703

MIN: 7808

THIS MORTGAGE ("Security Instrument") is given on FEBRUARY 8, 2008
The mortgagor is DAWN M. FOSTER AND DAVID A. FOSTER, WIFE AND HUSBAND

("Borrower").
This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
("Lender")
RESIDENTIAL FINANCE CORP
is organized and existing under the laws of OHIO
and has an address of 401 N. FRONT STREET, SUITE 300, COLUMBUS, OHIO
43215
Borrower owes Lender the principal sum of TWO HUNDRED THIRTY-THREE THOUSAND SIX
HUNDRED TWENTY-NINE AND 00/100 Dollars (U.S. $ 233,629.00 ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"). which provides for monthly payments, with the full debt, if not paid earlier, due and payable on MARCH 1, 2038
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in VOLUSIA County, Florida:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A";
A.P.N.: 26-18-30-19-01-0270

DF

Exh. "A"

Instrument# 2008-042820 # 2
Book:  6199
Page:  2923

which has the address of    2875 STAGS LEAP DRIVE

ORANGE CITY                 , Florida      32763           ("Property Address"):

[City]                                    [Zip Code]                        [Street]

TOGETHER WITH all the Improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or cancelling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.  Payment of Principal, Interest and Late Charge. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2.  Monthly Payment of Taxes, Insurance, and Other Charges. Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance

FHA FLORIDA MORTGAGE - MERS
6/96                              Page 2 of 9            DocMagic eForms  800-649-1362
                                                        www.docmagic.com

Instrument# 2008-042820 # 3
Book:  6199
Page:  2924

remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. Application of Payments. All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence /or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a

Instrument# 2008-042820 # 4
Book: 6199
Page: 2925

leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. Charges to Borrower and Protection of Lender's Rights in the Property. Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. Fees. Lender may collect fees and charges authorized by the Secretary.

9. Grounds for Acceleration of Debt.

(a) Default. Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) Sale Without Credit Approval. Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

Instrument# 2009-042820 # 5
Book:  6199
Page:  2926

(ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c)  No Waiver.  If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d)  Regulations of HUD Secretary.  In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid.  This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e)  Mortgage Not Insured.  Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within   60 DAYS from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument.  A written statement of any authorized agent of the Secretary dated subsequent to   60 DAYS   from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility.  Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10.  Reinstatement.  Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument.  This right applies even after foreclosure proceedings are instituted.  To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding.  Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full.  However, Lender is not required to permit reinstatement if:  (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11.  Borrower Not Released; Forbearance by Lender Not a Waiver.  Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest.  Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest.  Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12.  Successors and Assigns Bound; Joint and Several Liability; Co-Signers.  The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b).  Borrower's covenants and agreements shall be joint and several.  Any Borrower who co-signs this Security Instrument but does not execute the Note:  (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13.  Notices.  Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method.  The notice shall be directed

FHA FLORIDA MORTGAGE - MERS
6/98                                    Page 5 of 9                    DocMagic eForms  800-649-1362
                                                                       www.docmagic.com

DF
BB

Instrument# 2008-042820 # 6
Book: 6199
Page: 2927

to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Assignment of Rents. Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding, and any other remedies permitted by applicable law. Lender

FHA FLORIDA MORTGAGE - MERS
6/96                                          Page 8 of 9                      DocMagic ℰℱℴℴℳℴ 800-649-1362
                                                                               www.docmagic.com

Instrument# 2008-042820 # 7
Book:  6199
Page:  2928

shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19.  Release.  Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

20.  Attorneys' Fees.  As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

21.  Riders to this Security Instrument.  If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

☐ Condominium Rider            ☐ Graduated Payment Rider     ☐ Growing Equity Rider
☒ Planned Unit Development Rider  ☐ Adjustable Rate Rider       ☐ Rehabilitation Loan Rider
☐ Non-Owner Occupancy Rider    ☐ Other [Specify]

DocMagic eForms 800-649-1362
www.docmagic.com

Instrument# 2008-042820 # 8
Book:  6199
Page:  2929

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 9 of this Security
Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)          _____ (Seal)
DAWN M. FOSTER          -Borrower          DAVID A. FOSTER          -Borrower
2875 STAGS LEAP DRIVE, ORANGE              2875 STAGS LEAP DRIVE, ORANGE
CITY, FLORIDA 32763                        CITY, FLORIDA 32763


_____ (Seal)          _____ (Seal)
                        -Borrower                                   -Borrower



_____ (Seal)          _____ (Seal)
                        -Borrower                                   -Borrower



Witness:                                  Witness:

_____                 _____



FHA FLORIDA MORTGAGE - MERS                          DocMagic ☎ 800-649-1362
6/96                        Page 8 of 9                  www.docmagic.com

Instrument# 2008-042820 # 9
Book:  6199
Page:  2930

STATE OF FLORIDA
COUNTY OF   VOLUSIA

The foregoing instrument was acknowledged before me this   8   day of February , 2008
by    DAWN M. FOSTER AND DAVID A. FOSTER  , Wife & husband

who is personally known to me or who has produced  Drivers License

as Identification.

(Seal)

Jaclyn Montealegre
Notary Public

JACLYN MONTEALEGRE
Comm# DD0606720
Expires 9/19/2010
Florida Notary Assn., Inc

DF

Instrument# 2008-042820 # 10
Book: 6199
Page: 2931

FHA Case Number: 094-5359870-703
Loan Number: ████████0272

# FHA PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this        8th        day of
FEBRUARY, 2008          , and is incorporated into and shall be deemed to amend and
supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given
by the undersigned ("Borrower") to secure Borrower's Note ("Note") to  RESIDENTIAL
FINANCE CORP, AN OHIO CORPORATION
("Lender") of the same date and covering the Property described in the Security Instrument and located at:

2875 STAGS LEAP DRIVE, ORANGE CITY, FLORIDA 32763

[Property Address]

The Property is part of a planned unit development ("PUD") known as:
FAWN RIDGE

[Name of Planned Unit Development]

PUD COVENANTS.  In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A.  So long as the Owners Association (or equivalent entity holding title to common areas and
facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance
carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all
improvements now existing or hereafter erected on the mortgaged premises, and such policy is
satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against
the hazards Lender requires, including fire and other hazards included within the term "extended
coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the
provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of
one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii)
Borrower's obligation under Paragraph 4 of the Security Instrument to maintain hazard insurance
coverage on the Property is deemed satisfied to the extent that the required coverage is provided
by the Owners' Association policy.  Borrower shall give Lender prompt notice of any lapse in
required hazard insurance coverage and of any loss occurring from a hazard.  In the event of a
distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the
Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are
hereby assigned and shall be paid to Lender for application to the sums secured by this Security
Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments
creating and governing the PUD.

FHA - MULTISTATE PUD RIDER
(7/91)                              Page 1 of 2          DocMagic eForms 800-649-1362
                                                        www.docmagic.com

Instrument# 2008-042820 # 11
Book:   8199
Page:   2932

**C.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
DAWN M. FOSTER          Borrower        DAVID A. FOSTER          Borrower


_____ (Seal)          _____ (Seal)
                        Borrower                                Borrower


_____ (Seal)          _____ (Seal)
                        Borrower                                Borrower

FHA - MULTISTATE PUD RIDER
(7/91)                          Page 2 of 2           DocMagic EForms  800-649-1362
                                                       www.docmagic.com

Instrument# 2008-042828 # 12
Book: 6199
Page: 2933
Diane M. Matousek
Volusia County, Clerk of Court

FIRM FILE NO: ~~~~~~~~~~~~~~~~~~
Date; 02/08/08
Property: 2875 Stags Leap Drive, Orange City, FL 32763
Loan Number: ~~~~~0272
Parcel Number: 26-18-30-19-01-0270

## Exhibit A

Legal Description

Lot 27, Block A, FAWN RIDGE - PHASE II - A REPLAT, according to the map or plat thereof,
as recorded in Plat Book 50, Pages 52 through 54, inclusive, of the Public Records of Volusia
County, Florida.



STATE OF FLORIDA, VOLUSIA COUNTY
I HEREBY CERTIFY the foregoing is a true copy
of the original filed in this office.  This
23rd ___ day of September 2008
Clerk of Circuit and County Court
By: _Colleen Mero_
Deputy Clerk

MIN: ████████7808                    **NOTE**              Loan Number: ████272

> FHA CASE NO.
> ████████70-703

FEBRUARY 8, 2008
[Date]

2875 STAGS LEAP DRIVE, ORANGE CITY, FLORIDA 32763
[Property Address]

**1.  PARTIES**
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means
RESIDENTIAL FINANCE CORP, AN OHIO CORPORATION                         and its successors and assigns.

**2.  BORROWER'S PROMISE TO PAY; INTEREST**
In return for a loan received from Lender, Borrower promises to pay the principal sum of TWO HUNDRED
THIRTY-THREE THOUSAND SIX HUNDRED TWENTY-NINE AND 00/100
Dollars (U.S. $ 233,629.00    ), plus interest, to the order of Lender. Interest will be charged on unpaid principal,
from the date of disbursement of the loan proceeds by Lender, at the rate of SIX AND 500/1000
                                                                       percent (      6.500 %)
per year until the full amount of principal has been paid.

**3.  PROMISE TO PAY SECURED**
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same
date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might
result if Borrower defaults under this Note.

**4.  MANNER OF PAYMENT**
(A) Time
Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on
APRIL 1, 2008                           . Any principal and interest remaining on the first day of
MARCH, 2038                 , will be due on that date, which is called the "Maturity Date."

(B) Place
Payment shall be made at 401 N. FRONT STREET, SUITE 300, COLUMBUS, OHIO
43215
                        or at such other place as Lender may designate in writing by notice to Borrower.

(C) Amount
Each monthly payment of principal and interest will be in the amount of U.S. $ 1,476.69        . This amount
will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and
other items in the order described in the Security Instrument.

(D) Allonge to this Note for Payment Adjustments
If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the
allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part
of this Note. [Check applicable box.]

☐ Growing Equity Allonge            ☐ Graduated Payment Allonge

☐ Other [specify]

FLORIDA-FHA FIXED RATE NOTE (6/96)                    Page 1 of 2
Document System, Inc. (800) 646-1362



2875 Stags Leap Dr Orange City, FL 32763

████████0272

**5. BORROWER'S RIGHT TO PREPAY**

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

**6. BORROWER'S FAILURE TO PAY**

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000 percent ( 4.000 %) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7. WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

The state documentary tax due on this Note has been paid and the proper stamps have been affixed to the mortgage securing this indebtedness.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 2 of this Note.

_____ (SEAL)
DAWN M. FOSTER            Borrower

_____ (SEAL)
DAVID A. FOSTER           Borrower

_____ (SEAL)
                          Borrower

_____ (SEAL)
                          Borrower

_____ (SEAL)
                          Borrower

_____ (SEAL)
                          Borrower



# ALLONGE

Loan Number: 501880272

Loan Date: FEBRUARY 8, 2008

Borrower(s): DAWN M. FOSTER, DAVID A. FOSTER

Property Address: 2875 STAGS LEAP DRIVE, ORANGE CITY, FLORIDA 32763

Principal Balance: $233,629.00

## PAY TO THE ORDER OF

FLAGSTAR BANK, FSB

### Without Recourse

Company Name: RESIDENTIAL FINANCE CORP

By: _Lisa Damron_      Sr Post Closer
(Name)                   (Title)

Lisa Damron

MULTISTATE NOTE ALLONGE
03/08/07

DocMagic EForms 800-649-1362
www.docmagic.com

0272

2875 Stags Leap Dr. Orange City, FL 32763

Record and Return:
This instrument prepared by:
GREENFIELD & COOMBER, P.A.
7000 WEST PALMETTO PARK RD.
SUITE 402
BOCA RATON, FL 33433
LOAN# _____
MERS MIN# _____

## ASSIGNMENT OF MORTGAGE

### KNOWN ALL MEN BY THESE PRESENTS:

That MERS as nominee RESIDENTIAL FINANCE CORP., a corporation, in consideration of the sum of Ten Dollars ($10.00) and other good and valuable considerations, received from or on behalf of FLAGSTAR BANK, FSB, party of the second part, at or before the ensealing and delivery of these presents, the receipt whereof is hereby acknowledged, does hereby grant, bargain, sell, assign, transfer and set over unto the said party of the second part a certain mortgage bearing date the February 8, 2008, in favor of in Official Records Book 6199, at Page 2922, of the public records of VOLUSIA County, Florida, upon the following described piece or parcel of land, situate and being in said County and State, to-wit: Lot 27, Block A, FAWN RIDGE – PHASE II – A REPLAT, according to the map or plat thereof, as recorded in Plat Book 50, Pages 52 through 54, inclusive, of the Public Records of Volusia County, Florida.

Together with the note(s) or obligation(s) described in said mortgage, and the moneys due and to become due thereon with the interest.

TO HAVE AND TO HOLD the same unto the said party of the second part, heirs, legal representatives, successors and assigns forever.

IN WITNESS WHEREOF, the party of the first party has caused these presents to be executed in its name, and its corporate seal to be hereunto affixed, by its proper officers thereunto duly authorized the _____ day of _November_ _____, A.D. 2009

Signed, sealed and delivered
in our presence:

Print Name: _Joshua Sonye P._

Print Name: _Sue A. Vermeesch_

MERS as nominee RESIDENTIAL
FINANCE CORP.

_LINDSAY D ANDERS_ Vice President

CORPORATE SEAL

STATE OF _Michigan_ )
                                      ) SS:
COUNTY OF _Oakland_ )

THE FOREGOING INSTRUMENT was acknowledged before me this 10th day of November, 2009 by _LINDSAY D ANDERSON_, Vice President, MERS as nominee RESIDENTIAL FINANCE CORP. They are personally known to me or who have produced _____ as identification and who did (did not) take an oath.

Notary Public    _Sue A. Vermeesch_    My Commission Expires:    _08|31|2011_

SUE A VERMEESCH
NOTARY PUBLIC, STATE OF MI
COUNTY OF ST CLAIR
MY COMMISSION EXPIRES Aug 31, 2011
ACTING IN COUNTY OF OAKLAND

1

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

Case No. 6:09-bk-03965-ABB

Chapter 7

IN RE:                                          :
                                                :
David Foster                                    :
                                                :
                    Debtor.                     :
                                                :
                                                :

## AFFIDAVIT OF INDEBTEDNESS

Affiant, Patricia D. Woodruff is (Job Title) _Bankruptcy analyst_, Flagstar Bank,

FSB in _Troy, MI_ (Bank Dept.) ("Flagstar") and is fully familiar with the

instant action and makes this affidavit on her own personal knowledge.  She is Flagstar's

custodian of the business records concerning the transactions that were referred to in the

civil action to foreclose Flagstar's mortgage in State court.  The records are kept in the

ordinary course of business and reflect events at or near the time of the entry into the

records.

According to those records, as of October 1, 2008, Flagstar was owed the

following sums on the $232,126.19 loan:

| | |
|---|---|
| Principal: | $232,126.19 |
| Interest through _12-1-09_ | $ _15,059.64_ |
| Total Late Fees Due | $    354.42 |
| Escrow Balance | -$    846.74 |

To this amount would be added per diem amounts for the period after November

1, 2009.  The per diem amount for the loan is $_____ based upon a contract

rate of 6.500% per annum.

_Exh. "B"_

Plaintiff has retained Lawrence Weisberg, Esquire from Greenfield & Coomber,

P.A. to prosecute this action and has agreed to pay the firm reasonable attorney fees.

END OF AFFIDAVIT

_____
Patricia D. Woodruff

Sworn to and subscribed by Patricia D. Woodruff, for Flagstar Bank, FSB, before

me on this day of November 24, 2009 and who is personally known to me or who has

produced identification.

(SEAL)

_____
Notary Public

PEGGY A WAGNER
Notary Public - Michigan
Wayne County
My Commission Expires Apr 1, 2011
Acting in the County of Oakland

2

Volusia County Property Appraiser's Office      http://webserv.vcgov.org/cgi-bin/mainSrch3.cgi

## Volusia County Appraisers Office

The Volusia County Property Appraiser makes every effort to produce the most accurate information possible. No warranties, expressed or implied, are provided for the data herein, its use or interpretation. The values shown in the Total Values section at the end of the Property Record Card are "Working Tax Roll" values, as our valuations proceed during the year. These Working Values are subject to change until the Notice of Proposed Taxes (TRIM) are mailed in mid-August. For Official Tax Roll Values, see the History of Values section within the property record card below.

|  | Volusia County Property Appraiser's Office | |
|---|---|---|
| Last Updated: 11-17-2009<br>Today's Date: 11-21-2009 | Property Record Card (PRC)<br>Morgan B. Gilreath Jr., M.A., A.S.A., C.F.A.<br>Property Appraiser | Volusia County<br>FLORIDA |

| | | | |
|---|---|---|---|
| Full Parcel ID<br>Short Parcel ID | 26-18-30-19-01-0270<br>8026-19-01-0270 | Mill Group | 014 Orange City |
| Alternate Key | 6228060 | Millage Rate | 21.56994 |
| Parcel Status | Active Parcel | PC Code | 01 |
| Date Created | 17 SEP 2003 | | |
| Owner Name | FOSTER DAVID A & | | GO TO ADD'L OWNERS |
| Owner Name/Address 1 | DAWN M FOSTER H&W JTRS | | ESTIMATE TAXES |
| Owner Address 2 | 2875 STAGS LEAP DR | | |
| Owner Address 3 | ORANGE CITY FL | | |
| Owner Zip Code | 32763 | | |
| Location Address | 2875 STAGS LEAP DR ORANGE CITY | | |

### LEGAL DESCRIPTION

LOT 27 BLOCK A FAWN RIDGE PHASE II-A REPLAT MB 50 PGS 52-54

INC PER OR 5258 PG 4410 PER OR 6199 PGS 2920-2921

### SALES HISTORY

| # | BOOK | PAGE | DATE | INSTRUMENT | QUALIFICATION | IMPROVED? | SALE PRICE |
|---|---|---|---|---|---|---|---|
| 1 | 6199 | 2920 | 2/2008 | Quit Claim | Unqualified Sale | Yes | 100 |
| 2 | 5258 | 4410 | 2/2004 | Warranty Deed | Qualified Sale | No | 148,007 |

### HISTORY OF VALUES

GO TO ADD'L HISTORY

| YEAR | LAND | BLDG(S) | MISC | JUST | ASD | SCH ASD | NS ASD | EXEMPT | TXBL | SCH TXBL | ADD'L EX | NS TXBL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2009 | 23,650 | 103,780 | 0 | 127,430 | 127,430 | 127,430 | 127,430 | 25,000 | 102,430 | 102,430 | 25,000 | 77,430 |
| 2008 | 52,250 | 129,724 | 0 | 181,974 | 148,057 | 148,057 | 148,057 | 25,000 | 123,057 | 123,057 | 25,000 | 98,057 |

### LAND DATA

| TYPE OF LAND USE | FRONTAGE | DEPTH | # OF UNITS | UNIT TYPE | RATE | DPH | LOC | SHP | PHY | JUST VAL |
|---|---|---|---|---|---|---|---|---|---|---|
| IMP SFR TO .5AC PAVD | 55.0 | 115.0 | 55.00 | FRONT FEET | 430.00 | 100 | 100 | 100 | 100 | 23,650 |

| NEIGHBORHOOD CODE | 8784 | Unknown | | |
|---|---|---|---|---|

| | | | TOTAL LAND CLASSIFIED | 0 |
|---|---|---|---|---|
| | | | TOTAL LAND JUST | 23,650 |

### BUILDING CHARACTERISTICS

#### BUILDING 1 OF 1

GO TO BLDG SKETCH

| Effective Age | 1 | Next Review | 2011 | Obsolescence | Functional | 0% |
|---|---|---|---|---|---|---|
| | | Year Built | 2004 | | Locational | 0% |
| Quality Grade | 350 | Architecture | | | Base Perimeter | 198 |
| Improvement Type | Single Family | | | | | |

*Exh. "C"*

| Roof Type | GABLE | | Bedrooms | 3 | | 7FixBath | 0 |
|---|---|---|---|---|---|---|---|
| Roof Cover | Asphalt / Composition Shingle | | Air Conditioned | Yes | | 6FixBath | 0 |
| Wall Type | Drywall | | Fireplaces | 0 | | 5FixBath | 0 |
| Floor Type | Carpet | | XFixture | 0 | | 4FixBath | 0 |
| Foundation | Concrete Slab | | Heat Method 1 | Forced Ducted | | 3FixBath | 2 |
| Heat Source 1 | Electric | | Heat Method 2 | | | 2FixBath | 0 |
| Heat Source 2 | | | | | | | |

| SECTION # | AREA TYPE | EXTERIOR WALL TYPE | NUMBER OF STORIES | YEAR BUILT | ATTIC FINISH | % BSMT AREA | % BSMT FINISH | FLOOR AREA |
|---|---|---|---|---|---|---|---|---|
| 1 | Heated Living Area | CONCRETE BLOCK STUCCO | 1.0 | 2004 | | 0.00 | 0.00 | 1926 Sq. Feet |
| 2 | Unfinished Garage | Non-Applicable | 1.0 | 2004 | | 0.00 | 0.00 | 357 Sq. Feet |
| 3 | Finished Open Porch | Non-Applicable | 1.0 | 2004 | | 0.00 | 0.00 | 35 Sq. Feet |
| 4 | Finished Screen Porch | Non-Applicable | 1.0 | 2004 | | 0.00 | 0.00 | 90 Sq. Feet |
| 5 | Patio | Non-Applicable | 1.0 | 2004 | | 0.00 | 0.00 | 18 Sq. Feet |

## MISCELLANEOUS IMPROVEMENTS

| TYPE | NUMBER UNITS | UNIT TYPE | LIFE | YEAR IN | GRADE | LENGTH | WIDTH | DEPR. VALUE |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

## PLANNING AND BUILDING

| PERMIT NUMBER | PERMIT AMOUNT | DATE ISSUED | DATE COMPLETED | DESCRIPTION | OCCUPANCY NBR | OCCUPANCY BLDG |
|---|---|---|---|---|---|---|
| 20031118041 | 0.00 | 11-18-2003 | 11-18-2003 | IMPACT CITY | | 0 |
| 20031007032 | 0.00 | 10-8-2003 | 11-2-2004 | COUNTY UTILITIES | | 0 |

## TOTAL VALUES

The values shown in the Total Values section at the end of the Property Record Card are "Working Tax Roll" values, as our valuations proceed during the year. These Working Values are subject to change until the Notice of Proposed Taxes (TRIM) are mailed in mid-August. For Official Tax Roll Values, see the History of Values section above.

The Volusia County Property Appraiser makes every effort to produce the most accurate information possible. No warranties, expressed or implied, are provided for the data herein, its use or interpretation.

| Land Value | 23,650 | New Construction Value | 0 |
|---|---|---|---|
| Building Value | 103,780 | City Econ Dev/Historic Taxable | 0 |
| Miscellaneous | 0 | | |
| Total Just Value | 127,430 | Previous Total Just Value | 127,430 |
| School Assessed Value | 127,430 | Previous School Assessed | 127,430 |
| Non-School Assessed Value | 127,430 | Previous Non-School Assessed | 127,430 |
| Exemption Value | 25,000 | Previous Exemption Value | 25,000 |
| Additional Exemption Value | 25,000 | Previous Add'l Exempt Value | 25,000 |
| School Taxable Value | 102,430 | Previous Taxable | 0 |
| Non-School Taxable Value | 77,430 | Previous Non-School Taxable | 77,430 |

MapIT   PALMS   Map Kiosk                                                        Parcel Notes

MapIT: Your basic parcel record search including sales.

PALMS: Basic parcel record searches with enhanced features.

Map Kiosk: More advanced tools for custom searches on several layers including parcels.

